(2 N. Y. Ann. Cas. 114.)

### HUBBARD v. JAEGER ELECTRIC LAMP CO.

(Supreme Court, Special Term, New York County.  September, 1895.)

SHERIFFS—COSTS—FEES OF AUCTIONEER.
    1 Rev. St. p. 532, § 23, having limited the commission which may be charged by auctioneers, in the absence of written contract, to 2½ per cent. on the amount of sales, Laws 1890, c. 523, § 12, authorizing a sheriff to employ an auctioneer, and pay him a fee not to exceed the "customary market rate," must be construed to mean the market rate not exceeding 2½ per cent., and a custom to charge 5 per cent. cannot be shown to establish a market rate in violation of law.

Action by one Hubbard against the Jaeger Electric Lamp Company.  The property of defendant was sold on execution.  Motion to tax the fees of sheriff.

G. S. Carpenter, for plaintiff.

Charles F. McLean, for the sheriff.

BEEKMAN, J.   The objection made to the charge of the sheriff for a keeper is untenable.   The statute (Laws 1890, c. 523, § 15) expressly authorizes him to appoint and pay a keeper of property on which a levy has been made "not more than three dollars for each day of twelve hours" he is actually and necessarily employed in the safe-keeping of such goods or property.   In the present case the affidavit of the keeper is furnished, showing an employment and occupation within the terms of the statute.   The most serious objection presented to me for my consideration is to the auctioneer's charge for his commissions, which have been computed at the rate of 5 per cent. upon the amount made on the execution, the claim being that he is entitled to charge only 2½ per cent.   I think this exception is well taken.   Laws 1890, c. 523, § 12, which authorizes the sheriff to employ an auctioneer, provides that the former shall "withhold from the proceeds of the sale a sum sufficient to compensate the auctioneer for the services rendered by him in conducting such sale, together with all necessary disbursements of such auctioneer as may be approved by the sheriff or by the attorneys for the parties to the said action or proceeding, and to pay over such sum to the said auctioneer; but in no case shall such auctioneer's fee exceed the customary market rate of auctioneer's fees for similar services."   It is contended on the part of the sheriff that 5 per cent. is such customary market rate.   However that may be, the statute of this state which regulates the charges of auctioneers provides that "no auctioneer shall demand or receive a higher compensation for his services than a commission of two and one-half per cent. on the amount of any sales, public or private, made by him, unless by virtue of a previous agreement in writing between him and the owner or consignee of the goods or effects sold." 1 Rev. St. p. 532, § 23.   For a violation of this mandate he is made liable to the party aggrieved for a penalty of $250 and the moneys illegally received.   The act of 1890, which limits the charges of the sheriff's auctioneer to the "customary market rate," must be construed as meaning such market rate not exceeding 2½ per cent.   The law will not recognize a custom, how-

ever general, which rests upon a breach of the law.   To hold that "the customary market rate" referred in the act of 1890 was intended to include unlawful charges customarily made by auctioneers involves an absurdity which the courts will not impute to the legislature.   This item must therefore be reduced one-half.   The item for advertising, charged at $8.10, has been reduced by the sheriff to $3.60, the amount first charged having been erroneously computed by the bookkeeper.   I do not find any other errors in the charges submitted.   It may be that the property sold has realized much less than its actual value, but there is nothing in the papers to show that this was the result of any negligence on the part of the sheriff.   It is perhaps a misfortune that the plaintiff's attorney did not have notice of the sale, but there is nothing in the law which requires the sheriff to give him any such notice.   He should have inquired himself in respect to the levy and the time of sale.   It was certainly more his duty to do so than it was that of the sheriff to seek him out and give him the desired notice.   Let an order be submitted in conformity with the above views.